IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MURIAL KALLMAN and STANLEY KALLMAN, | CIVIL ACTION |
| Plaintiffs, | |
| v. | No. 13-4637 |
| CRAIG ARONCHICK, M.D., et., | |
| Defendants. | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                    **NOVEMBER 8, 2013**

Presently before the Court is Plaintiffs, Murial Kallman and Stanley Kallman's (collectively, "Plaintiffs"), Motion to Remand, Defendants, Craig Aronchick, M.D. ("Dr. Aronchick"), Salix Pharmaceuticals, Inc., Salix Pharmaceuticals, Ltd. ("Salix Defendants"), and InKine Pharmaceutical Company, Inc.'s ("InKine") (collectively, "Defendants"), Response, and Plaintiffs' Reply. For the reasons stated below, the Motion for Remand is denied.

## I.    BACKGROUND

Plaintiffs[1] filed the instant Complaint on August 8, 2013, against Defendants[2] in the Court of Common Pleas of Philadelphia County alleging that Murial Kallman suffers with "Stage 4

---

[1] Plaintiffs, a wife and husband, are citizens of New Jersey. Am. Compl. ¶ 1.

[2] Defendant, Salix Pharmaceuticals, Inc., is a California corporation with its principal place of business in North Carolina. Am. Compl. ¶ 2. Defendant, Salix Pharmaceuticals, Ltd., is a Delaware corporation with its principal place of business in Delaware. Id. ¶ 3. Defendant, InKine Pharmaceutical Company, Inc., is a New York corporation with its principal place of business in North Carolina. Id. ¶ 4. Defendant, Dr. Aronchick, is a Gastroenterologist, who has a professional business in Philadelphia, Pennsylvania. Id. ¶ 5. Dr. Aronchick also resides in Villanova, Pennsylvania. (Doc. No. 1 at 8.)

Kidney Disease" as a result of ingesting the Salix Defendants' prescription medication known as "OsmoPrep."[3]  Am. Compl. ¶¶ 14-15.  Plaintiffs allege that on or about December 20, 2011, Murial Kallman orally ingested OsmoPrep tablets in preparation for a colonoscopy without knowledge of the significant health risks it created for consumers.  Id. ¶¶ 14, 49.  Plaintiffs assert that in January of 2012, after taking OsmoPrep, Murial Kallman had a routine blood test which indicated that her Glomerular Filtration Rate was at 18.  Id. ¶ 15.  As a result of this test, Plaintiffs claim that she underwent a renal biopsy which indicated that she suffers from "Stage 4 Kidney Disease."  Id.

The Salix Defendants and InKine were served with Plaintiffs' Complaint on August 9, 2013.  Also on this date, Defendants removed this action to this Court[4] based on diversity of citizenship and the inapplicability of the forum defendant rule set forth in 28 U.S.C. § 1441(b)(2).[5]  Defendants assert that the forum defendant rule is inapplicable because Dr. Aronchick had not been properly joined and served with Plaintiffs' Complaint at the time of the

---

[3]OsmoPrep is an "oral sodium phosphate tablet or pill product taken as a purgative prior to colonoscopy to cleanse the bowel."  (Pls.' Resp. Mot. Remand at 4.)

[4]Defendants sought removal to this District because the United States District Court for the Eastern District of Pennsylvania is the federal court encompassing the Philadelphia Court of Common Pleas where Plaintiffs originally filed suit.  See 28 U.S.C. § 1441(a)

[5]This section states in relevant part:

> A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b)(2).

2

removal and, in the alternative, had been fraudulently joined[6] in this action. (Defs' Resp. Mot. Remand at 4.) The Salix Defendants and InKine filed Motions to Dismiss for failure to state a claim on August 29, 2013 (Doc. Nos. 6-7), and Plaintiffs filed the instant Motion to Remand on August 30, 2013. (Doc. No. 8).

Plaintiffs subsequently filed an Amended Complaint on September 12, 2013. (Doc. No. 12.) In the Amended Complaint, Plaintiff, Muriel Kallman, asserts the following causes of action: (1) Count I- Fraud against all Defendants; (2) Count II- Negligent Misrepresentation against all Defendants; (3) Count III- Strict Liability(Design Defect) against all Defendants; (4) Count IV- Strict Liability (Failure to Warn) against all Defendants; (5) Count V- Negligence against the Salix Defendants; (6) Count VI- Negligence against Dr. Aronchick; (7) Count VII- Negligent Undertaking against Dr. Aronchick; (8) Count VIII- Civil Conspiracy against all Defendants; (9) Count IX- Breach of Implied Warranty of Merchantability against the Salix Defendants; (10) Count X- Breach of Warranty of Fitness for a Particular Purpose against the Salix Defendants; (11) Count XI- Breach of Express Warranty against the Salix Defendants; (12) Count XII- Violation of Consumer Protection Laws against all Defendants; (13) Count XIII- Failure to Supply Pre-Complaint Discovery;[7] (14) Count XIV- Claims under the New Jersey Product Liability Act against all Defendants; and (15) Count XV- Alter Ego against the Salix Defendants. In addition, Plaintiff, Stanley Kallman, asserts a claim for Loss of Consortium against all Defendants (Count XVI).

The Salix Defendants and InKine filed additional Motions to Dismiss on September 26,

---

[6]The issue of fraudulent joinder will be discussed, <u>infra</u>.

[7]Plaintiffs have agreed to dismiss this Count. (Pls.' Resp. Mot. Dismiss at 2 n.2.)

3

2013. (Doc. Nos. 15-16.) Dr. Aronchick also filed a Motion to Dismiss on this same date. (Doc. 17.) Plaintiffs filed their Responses to these Motions on October 17, 2013.[8] (Doc. Nos. 21-23.)

## II. DISCUSSION

### A. Choice of Law

Plaintiffs assert that their Complaint and Amended Complaint are "designed to state causes of action under both Pennsylvania and New Jersey law since without discovery Plaintiff[s] [do] not have enough information to make a choice of law analysis." (Pls.' Resp. Mot. Dismiss at 9-10.) Plaintiffs further state that "[a]s to the Salix Defendants, it may be that New Jersey law applies to the Product Liability claims, but as to Dr. Aronchick the analysis is complicated and Plaintiff's [sic] do not have the necessary discovery to argue one way or the other." (Id. at 10.) However, a choice of law analysis is necessary in order for this Court to determine if Plaintiffs have any possible cause of action against Dr. Aronchick under Pennsylvania or New Jersey law and to make a determination whether Dr. Aronchick was fraudulently joined.

We first note that the Court of Appeals for the Third Circuit ("Third Circuit") has stated that "'[a] federal court cannot engage in a choice of law analysis where diversity jurisdiction is not first established,' precluding a court from performing a choice of law analysis at the fraudulent joinder stage so long as the plaintiff's proffered choice of law is colorable." State Farm Fire and Cas. Co. v. Abels, 770 F.2d 26, 32-33 n.10; see also Moore v. Johnson & Johnson,

---

[8]We do not address these Motions to Dismiss in this Memorandum Opinion for the reasons discussed, infra.

4

907 F. Supp. 2d 646, 662-63 (E.D. Pa. 2012); Gibboni v. Hyatt Corp., No. 10–2629, 2011 WL 1045047, at *3 n.1 (E.D. Pa. Mar. 22, 2011).

However, diversity jurisdiction is established in this Court. As noted, Plaintiffs are residents of New Jersey. The Salix Defendants' principal places of business are in North Carolina and Delaware, and InKine's principal place of business is in North Carolina. Am. Compl. ¶¶ 2-4. Dr. Aronchick is a Pennsylvania resident. Even if we were to determine that Dr. Aronchick was not fraudulently joined, complete diversity of citizenship would still exist between all the parties.[9] Thus, we will make a choice of law analysis.

This Court must apply the forum's choice of law rules. Chin v. Chrysler, LLC, 538 F.3d 272, 278 (3d Cir. 2008); Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir. 1988). Pennsylvania's choice of law approach adopts a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964); see also Knipe v. SmithKline Beecham, 583 F. Supp. 2d 602, 613 (E.D. Pa. 2008). Pennsylvania's analysis consists of three steps. First, the court must determine whether a real conflict exists, that is, whether these states would actually treat the relevant issues any differently. Hammersmith v. TIG Ins. Co., 480 F.3d 220, 229-30 (3d Cir. 2007). If there is no substantive difference between the laws of the competing states, no real conflict exists and forum law applies. Id. at 230. Where a real conflict exists, the court moves to the second step and examines the governmental policies underlying each law in order to classify the conflict as true, false or an unprovided for situation. Id. A false conflict occurs where only one state's

---

[9]Of course, if we were to determine that Dr. Aronchick was not fraudulently joined, although complete diversity exists between the parties, Defendants could not remove this action to this Court pursuant to the forum defendant rule set forth in 28 U.S.C. 1441(b)(2).

5

interests would be impaired, and the law of the interested state applies. LeJeune v. Bliss-Salem Inc., 85 F.3d 1069, 1071 (3d Cir. 1996). Where, on the other hand, each jurisdiction has a governmental policy or interest that would be impaired by the application of the other state's law, a true conflict exists. Id. Where there is a true conflict, the court turns to the third step to "determine which state has the 'greater interest in the application of its law.'" Hammersmith, 480 F.3d at 231 (quoting Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970)). This determination demands that a court weigh the contacts each jurisdiction has with the dispute on a qualitative scale according to the extent they implicate the policies and interests underlying the particular dispute before the court. Id.

    **1.**    **Real Conflict**

We find that a real conflict clearly exists between the product liability laws of New Jersey and Pennsylvania. Pennsylvania courts allow claims of negligence and breach of implied warranty to be brought in conjunction with a products liability claim. Torres v. Lucca's Bakery, 487 F. Supp. 2d 507, 513 (D. N.J. 2007); see also Knipe, 583 F. Supp. 2d at 614. However, unlike Pennsylvania, New Jersey has enacted the New Jersey Product Liability Act ("NJPLA") to codify certain aspects of New Jersey's product liability law. See N.J.S.A. § 2A:58C-1, et seq. The NJPLA subsumes common law products liability claims into one statutory cause of action for strict liability. Torres, 487 F. Supp. 2d at 513. It is the "sole basis of relief under New Jersey law available to consumers injured by a defective product." Repola v. Morbanks Indus., Inc., 934 F.2d 483, 492 (3d Cir. 1991). The NJPLA does not permit negligence and breach of warranty as separate claims for injuries caused by the defective products. Torres, 487 F. Supp. 2d at 513. "When dealing with liability based on negligence, strict liability, products liability or

6

the like, differing rules as to liability or damages generally represent genuine conflicts since the laws covering these issues take into account both the needs of the injured plaintiffs and the economic viability of the defendants." Id. (quoting Boyes v. Greenwich Boat Works, Inc., 27 F. Supp. 2d 543, 548 (D. N.J. 1998)); see also Knipe, 583 F. Supp. 2d at 614; Borelli v. Everland, No. 00-5721, 2006 WL 435730, at *3 (E.D. Pa. Feb.21, 2006). Thus, we find a real conflict exists between the product liability laws of New Jersey and Pennsylvania.

### 2. True Conflict

Next, we also find that a true conflict exists. As noted above, both Pennsylvania and New Jersey seek to "compensate people injured by defective products and regulate the conduct of manufacturers and distributors (i.e., ensure production of safe products) within the state." Torres, 487 F. Supp. 2d at 513-14; see also Knipe, 583 F. Supp. 2d at 614. Because each of their respective interests would be impaired by the application of the other state's law, there is a true conflict between the laws of Pennsylvania and New Jersey. See Knipe, 583 F. Supp. 2d at 614.

### 3. Greater Interest

As noted, the third inquiry is a consideration of which state has the "greater interest in the application of its law.'" Hammersmith, 480 F.3d at 231. "In making this determination, this Court must look to an array of factors: (i) the place where the injury occurred; (ii) the place where the conduct causing the injury occurred; (iii) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (iv) the place where the relationship, if any, between the parties is centered." Henderson v. Merck & Co., Inc., No. 04-5987, 2005 WL 2600220, at *7 (E.D. Pa. Oct.11, 2005) (citing Restatement (Second) of Conflicts § 145); see also Knipe, 583 F. Supp. 2d at 614. In Knipe, the Court determined that the "jurisdiction in

7

which the drug was prescribed and ingested clearly maintains the strongest interest in applying its applicable law to regulate the sale, prescription and ingestion of pharmaceuticals within its borders." 583 F. Supp. 2d at 615; see also In Blain v. Smithkline Beecham Corp., 240 F.R.D. 179, 193 (E.D. Pa. 2007); Bearden v. Wyeth, 482 F. Supp. 2d 614 (E.D. Pa. 2006); Henderson, 2005 WL 2600220, at *7.

Here, we find that New Jersey clearly has substantively greater contacts with the instant action than Pennsylvania, and has the "greater interest in the application of its law." See Hammersmith, 480 F.3d at 231. It is undisputed that Plaintiffs resided in New Jersey at all relevant times. OsmoPrep was prescribed to Plaintiff, Murial Kallman, in New Jersey. The prescription was filled there, and she ingested OsmoPrep in New Jersey. The Salix Defendants and InKine have their principal places of business outside New Jersey and Pennsylvania. Dr. Aronchick is the only Defendant who has ties to Pennsylvania. However, the Court stated in Knipe that "[t]he mere fact that defendant resides in Pennsylvania and conducts some business there simply does not outweigh New Jersey's duel interests in protecting its citizens and regulation business conduct occurring within its borders." 583 F. Supp. 2d at 616. Accordingly, the Court finds that New Jersey law applies to the substantive claims at issue.

**B.    Fraudulent Joinder**

We now move on to the issue of whether Dr. Aronchick was fraudulently joined as a Defendant in this action. Under 28 U.S.C. § 1447(c), a plaintiff may remand an action to state court if removal was "procedurally defective." Snider v. Sterling Airways, Inc., No. 12-3054, 2013 WL 159813, at *1 (E.D. Pa. Jan. 15, 2013). A removal is procedurally defective if it violates the "forum defendant rule." Id. Under the forum defendant rule, a civil action that is

"otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

"Removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand." Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992). "The removing party carries a heavy burden of persuasion" in establishing fraudulent joinder. Id. "Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant[ ] or seek a joint judgment." Id.

"In evaluating the alleged fraud, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed" and "must assume as true all factual allegations of the complaint." Id. at 851-52. The court must also "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." Id. at 852. Significantly, the court's inquiry into the validity of a complaint when faced with an assertion of fraudulent joinder is less searching than that triggered upon the filing of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Id. "[A] district court must not step 'from the threshold jurisdictional issue into a decision on the merits.'" In re Briscoe, 448 F.3d 201, 219 (3d Cir. 2006).

Thus, we will not find a joinder to be fraudulent "[s]imply because we come to believe that, at the end of the day, a state court would dismiss the allegations against a defendant for failure to state a cause of action." Lyall v. Airtran Airlines, Inc., 109 F. Supp. 2d 365, 367-68 (E.D. Pa. 2000). Rather, we will only find fraudulent joinder where the Plaintiffs' claims are "wholly insubstantial and frivolous." Batoff, 977 F.2d at 852 (quoting Lunderstadt v. Colafella,

9

885 F.2d 66, 70 (3d Cir. 1989)). "In other words, a finding of fraudulent joinder is usually reserved for situations where recovery from the nondiverse defendant is a clear legal impossibility." West v. Marriott Hotel Servs., Inc., No. 10-4130, 2010 WL 4343540, *3 (E.D. Pa. Nov. 2, 2010). "Fraudulent joinder should not be found simply because plaintiff has a weak case against a non-diverse defendant." Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).

Here, if we determine that Dr. Aronchick's joinder was fraudulent, we can "disregard, for jurisdictional purposes, the citizenship of [the] nondiverse defendant[ ], assume jurisdiction over [the] case, dismiss the nondiverse defendant[ ], and thereby retain jurisdiction." Briscoe, 448 F.3d at 216. On the other hand, if we determine that we do not have jurisdiction over the action because joinder of Dr. Aronchick was not fraudulent, we must remand the case to state court. Id. (citing 28 U.S.C. § 1447(c)).

Plaintiffs argue that Dr. Aronchick was properly joined because they have colorable causes of action against him in that Dr. Aronchick is the "inventor, designer, and researcher of OsmoPrep." (Pls.' Mot. Remand at 12.) Plaintiffs also claim that Dr. Aronchick "acted as a paid consultant for the Salix Defendants and has significant interests and rights related to the sale of OsmoPrep." (Id.) Defendants assert that, even assuming that Dr. Aronchick performed all of these endeavors and has a financial relationship with the Salix Defendants with regard to OsmoPrep, Plaintiffs would still not have a colorable claim against Dr. Aronchick under either Pennsylvania or New Jersey product liability law. (Defs.' Resp. Mot. Remand at 14.) We agree.

As discussed above, we determined that New Jersey law applies in this case. As we also

noted, New Jersey has enacted the NJPLA which codifies New Jersey's product liability law. See N.J.S.A. 2A:58C-1, *et seq*. The NJPLA subsumes common law products liability claims into one statutory cause of action for strict liability. Torres, 487 F. Supp. 2d at 513. In New Jersey, any action brought by a plaintiff for harm caused by a product, irrespective of the theory underlying the claim, is governed by the NJPLA. Johnson v. Draeger Safety Diagnostics, Inc., No. 13-2439, 2013 WL 3788937, at *2 (D. N.J. July 19, 2013); see also Sinclair v. Merck & Co., Inc., 948 A.2d 587 (N.J. 2008) ( "[T]he Legislature expressly provided in the PLA that claims for 'harm caused by a product' are governed by the PLA 'irrespective of the theory underlying the claim.'"). "Thus, with the exception of breach of express warranty claims,[10] the PLA is the exclusive remedy for "harm caused by a product" regardless "of the theory underlying the claim." Id.; see also Repola v. Morbark Indus., Inc., 934 F.2d 483, 492 (3d Cir. 1991) (holding that the PLA "effectively creates an exclusive statutory cause of action for claims falling within its purview").

Under the NJPLA there are only three causes of action: (1) manufacturing defect, (2) failure to warn, or (3) design defect. See N.J.S.A. § 2A:58C–2. "[T]he PLA no longer recognizes negligence or breach of warranty (with the exception of an express warranty) as a viable separate claim for harm [,] [including personal injury,] caused by a defective product or an inadequate warning." Koruba v. Am. Honda Motor Co., Inc., 935 A.2d 787, 789 (N.J. Super. 2007). "Rather, the exclusive method to prosecute such a claim is under N.J.S.A. 2A:58C–2 by proving that the product was not reasonably fit, suitable or safe for its intended purpose because

---

[10]It is noted that Plaintiffs do not assert a claim for breach of express warranty against Dr. Aronchick.

it either contained a manufacturing defect, failed to contain adequate warnings or instructions, or was designed in a defective manner." Id. (citing N.J.S.A. 2A:58C-2).

Thus, in order for Plaintiffs to have colorable causes of action against Dr. Aronchick for injuries caused by the product OsmoPrep, such claims would have to be able to be brought under the NJPLA. Under the NJPLA, Plaintiffs only possible cause of action against Dr. Aronchick would be for strict liability. See Torres, 487 F. Supp. 2d at 513. Dr. Aronchick, however, is not a viable Defendant under the NJPLA because he is not a manufacturer or seller of OsmoPrep. See N.J.S.A. 2A:58C–2. In making such a determination, we focus on Plaintiffs' Complaint at the time the petition for removal was filed and we assume, as true, all factual allegations of the Complaint. See Batoff, 977 F.2d at 852.

N.J.S.A. 2A:58C-2 states:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable, or safe for its intended purpose because it: a. deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J.S.A. 2A:58C–2.

The plain language of the NJPLA provides for no cause of action against an "inventor, royalty owner, patent holder, or promoter of a product."[11] See N.J.S.A. 2A:58C–2. The NJPLA

---

[11] Plaintiffs allege that Dr. Aronchick received a $1000 payment for his participation as a consultant to the Salix Defendants and was paid royalties related to the sale of OsmoPrep. However, the term "Product Seller" under the NJPLA does not include "[a]ny person who acts in only a financial capacity with respect to the sale of a product." N.J.S.A. 2A:58C-8(3).

applies only to a "manufacturer or seller of a product." Id. Dr. Aronchick is clearly neither. The New Jersey Superior Court stated in Potwora ex rel. Gray v. Grip, 725 A.2d 697, 702 (N.J. Super. 1999) that:

> The type of entities which may be held strictly liable beyond that of traditional manufacturers and sellers has been expanded. See Ramos v. Silent Hoist and Crane Co., 607 A.2d 667 (N.J. Super. 1992). Our Supreme Court has upheld products liability actions against a builder and reconditioner of a machine (Michalko v. Cooke Color & Chem. Corp., 451 A.2d 179 (N.J. 1982)), a mass producer of houses (Schipper v. Levitt & Sons, Inc., 207 A.2d 314 (N.J. 1965)), and a lessor of trucks (Cintrone v. Hertz Truck Leasing & Rental Serv., 212 A.2d 769 (N.J. 1965)). Further, successor corporations are responsible for damages caused by defects in products manufactured and distributed by predecessors. Ramirez v. Amsted Indus., Inc., 431 A.2d 811 (N.J. 1981).

Potwora ex rel. Gray, 725 A.2d at 702. However, Plaintiffs have not offered, nor have we found, any New Jersey case law to support a colorable cause of action for strict liability against Dr. Aronchick with regard to any of the activities and functions that Plaintiffs allege he participated in regarding OsmoPrep. Thus, we find that Dr. Aronchick's joinder was fraudulent because Plaintiffs' claims against him under New Jersey law are "wholly insubstantial and frivolous."[12] See Batoff, 977 F.2d at 852. Accordingly, we deny the Motion to Remand, and dismiss Dr. Aronchick as a Defendant.[13] See Briscoe, 448 F.3d at 216.

---

[12] Even assuming that Pennsylvania law applied, we agree with Defendants that the only case law cited by Plaintiffs to establish negligence on the part of Dr. Aronchick is a "social" or "universal" duty of care. (Pls.' Mot. Remand at 12); see e.g. Probst v. Caldwell Store, Inc., 187 A.2d 273 (Pa. 1963); St. Clair v. B&L Paving Co., 411 A.2d 525 (Pa. Super. 1979). However, none of the cases cited by Plaintiffs involve a products liability action or discuss any duty on the part of an inventor, patent holder, or royalty owner of an FDA-approved pharmaceutical product. Thus, Plaintiffs would not have a colorable cause of action against Dr. Aronchick under Pennsylvania law as well.

[13] Defendants also argue that the Motion for Remand should be denied because Dr. Aronchick had not been properly served with the Complaint at the time of removal. However, in light of our determination that Dr. Aronchick was fraudulently joined, we need not address this issue.

C. **Transfer**

Because the instant action was pending in the Philadelphia Court of Common Pleas, Defendants sought removal to this District in accordance with 28 U.S.C. § 1441(a).[14] However, 28 U.S.C. § 1391(b) states in relevant part that a civil action may only be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.

28 U.S.C. § 1391(b). Here, because we have dismissed Dr. Aronchick from this action, this District is no longer the proper venue. It is undisputed that Plaintiffs are residents of New Jersey. The Salix Defendants have principal places of business in Delaware and North Carolina, and InKine's principal place of business is in North Carolina. Am. Compl. ¶¶ 2-4. With Dr. Aronchick dismissed from this case, none of the Defendants are residents of Pennsylvania. Accordingly, for the reasons which follow, we will transfer this action to the District of New Jersey.

We first note that under 28 U.S.C. § 1406(a), a district court may sua sponte transfer a case to a court of proper jurisdiction when such a transfer is in the interest of justice. See Decker

---

[14]This section provides:

> (a) Generally.– Except as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

v. Dyson, 65 F. App'x 951, 954, (3d Cir. 2006); Nation of Islam v. Penna. Dept. of Corrections, No. 12-82, 2012 WL 529546, at *2 (W.D. Pa. Feb. 1, 2012). A district court has "broad discretion in deciding whether to order a transfer." Decker, 65 F. App'x at 954, quoting Caldwell v. Palmetto State Sav. Bank of S.C., 811 F.2d 916, 919 (5th Cir. 1987).

28 U.S.C. § 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The Court's § 1404(a) analysis must be done on an individualized case-by-case consideration of convenience and the interests of justice." Teleconference Sys. v. Proctor & Gamble Pharm., Inc., 676 F. Supp. 2d 321, 329 (D. Del. 2009).

In considering a motion to transfer under § 1404(a), courts do not limit their consideration to the three factors enumerated in the statute, but instead "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). When determining whether to transfer a case pursuant to Section 1404(a), courts in the Third Circuit apply the public and private interest factors delineated in Jumara. See Mallinckrodt, Inc. v. E-Z-Em Inc., 670 F. Supp. 2d 349, 356 (D. Del. 2009) ("In determining whether to transfer a case pursuant to § 1404(a), courts in the Third Circuit apply the public and private interest factors outlined in Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995).").

Courts consider the following private interests: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the

convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records, again, only to the extent that they may not be available in one of the fora. Jumara, 55 F.3d at 879. Courts consider the following public interests: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law in diversity cases. Id. at 879-80. If the factors are evenly balanced or weigh only slightly in favor of the transfer, a transfer will be denied. Cont'l Cas. Co. v. Am. Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999).

As a threshold matter, it is undisputed that Plaintiffs could have brought this action in the District of New Jersey. See 28 U.S.C. §§ 1391(c). Consequently, this Court's sole task is to determine, by balancing the private and public interest factors, whether a transfer of this action to the District of New Jersey is in the interest of justice and convenient for the parties as required under Section 1404(a). After balancing the pertinent factors, the Court finds that the relevant interests strongly weigh in favor of transfer to the District of New Jersey.

**1.      Private Interest Factors**

**a.      The Parties' Choice of Forum**

Generally, a plaintiff's choice of forum is "paramount" and should not be "lightly disturbed." Jumara, 55 F.3d at 879-80. Here, Plaintiffs chose to litigate their action in Pennsylvania state court in the Philadelphia Court of Common Pleas. In their Motion to Remand back to that Court and their Reply to Defendants' Response, Plaintiffs have not asserted a choice

of forum preference if their Motion was to be denied. Furthermore, as noted, Defendants removed this action to this District in accordance with 28 U.S.C. § 1441 because the action was pending in the Philadelphia Court of Common Pleas. Defendants have not motioned for a change in venue and have not asserted that this District is preferable to the District of New Jersey. Accordingly, we find that the parties' choice of forum does not weigh in favor or against a transfer to the District of New Jersey.

### b. Where the Claim Arose & Convenience of the Parties and Witnesses

There is no dispute the claim arose in the District of New Jersey. There is also no question that OsmoPrep was prescribed by a New Jersey physician, the prescription filled in New Jersey, and Murial Kallman consumed OsmoPrep in New Jersey. Thus, with regard to this factor, there is no connection to the Eastern District of Pennsylvania. Accordingly, this factor weighs heavily in favor of transfer to the District of New Jersey.

Next, we consider the convenience of the parties and witnesses. "The convenience of the parties and witnesses, and the location of relevant evidence, are the most important factors in the § 1404(a) analysis." Teleconference Sys., 676 F. Supp. 2d at 331. The convenience of witnesses is only considered, however, "to the extent that the witnesses may actually be unavailable for trial in one fora." Jumara, 55 F.3d at 879. Here, there is no indication that Plaintiffs and/or witnesses would be inconvenienced by this action being litigated in this District as opposed to the adjoining District of New Jersey. Moreover, there is also no indication that the Defendants would be inconvenienced by litigating this action in the District of New Jersey. Accordingly, we find the convenience of the parties and witnesses to be a neutral factor in consideration of transfer to the

District of New Jersey.

### c. Location of Books and Records

Regarding the location of evidence, a court should only consider the location of books and records to the extent that the files could not be produced in the alternative forum. Jumara, 55 F.3d at 879. Here, there is no indication that Defendants' records could not be produced in the District of New Jersey as easy as this District. In addition, it is highly likely that the majority of Plaintiffs' relevant documents are in New Jersey. Thus, this factor weighs minimally in favor of transfer to the District of New Jersey.

In conclusion of the analysis of the relevant private interest factors, we conclude that the balance of the factors weighs strongly in favor of transferring this case to the District of New Jersey.[15]

## III. CONCLUSION

After conducting a choice of law analysis, we find that New Jersey law applies to the substantive claims at issue. We further determine that Dr. Aronchick was fraudulently joined and, thus, we deny Plaintiffs' Motion to Remand this action back to the Philadelphia Court of Common Pleas. Lastly, we determine that the Eastern District of Pennsylvania is not the proper venue for this action. After considering the above private and public factors, this Court finds that they balance strongly in favor of transfer to the District of New Jersey. For these reasons,

---

[15] In addition, we find that public interest factors of the enforceability of judgment, the public policies of the fora, and the familiarity of the trial judge with applicable state law are all neutral because there is no indication from the record in this case that these factors weigh for or against a transfer to the District of New Jersey.

Plaintiffs' Motion to Remand is denied and this action is transferred to the District of New Jersey.[16]

    An appropriate Order follows.

---

[16] As noted earlier, the Salix Defendants and InKine filed Motions to Dismiss. (Doc. Nos. 6-7, 15-16.) However, because we have determined that this District is not the proper venue and that this case should be transferred to the District of New Jersey, we will not consider the merits of these Motions. Rather, we will deny them without prejudice for Salix Defendants and InKine to re-file in the District of New Jersey upon transfer of this matter if they so desire.